# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,                    )
                                             )
               Plaintiff,                    )
                                             )
        v.                                   )        Criminal Action No. 10- | | 9 - UNA
                                             )
P.P. LIST MANAGEMENT, INC. AND               )
TRANSMONDE U.S.A., INC.,                     )
                                             )
               Defendants.                   )

### DEFERRED PROSECUTION AGREEMENT

Pursuant to discussions between the United States of America, by and through its attorneys,

David C. Weiss, United States Attorney for the District of Delaware, and Christopher J. Burke,

Assistant United States Attorney (collectively, the "United States" or the "United States

Attorney's Office"), and the defendants P.P. List Management, Inc., a corporation organized

under the laws of New York, and Transmonde U.S.A., Inc., a corporation organized under the

laws of Connecticut (collectively, "the defendants"), by and through their attorneys Linda

Goldstein and Chad S. Hummel of Manatt, Phelps & Phillips LLP, the parties hereby enter into

the following Deferred Prosecution Agreement ("Agreement"):

### Term of Agreement

1. This Agreement shall be in effect for a period of 18 months.

### The Criminal Information

2. The defendants understand that the United States will file a criminal Information in the

   United States District Court for the District of Delaware charging the defendants with an

FILED

DEC. 2 0 2010

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

offense under 18 U.S.C. § 1341 relating to certain alleged fraudulent solicitation-related

mailing practices undertaken by defendants. In executing this Agreement, the defendants

knowingly and willingly waive their right to indictment on this charge. In doing so, the

defendants understand that (a) unless they waive indictment, they could not be charged with

the offense set forth in the criminal Information unless the Grand Jury found probable cause

to believe they committed the offense and returned an indictment; (b) the Grand Jury is

composed of at least sixteen, but not more than twenty-three lay persons, and at least twelve

of those grand jurors must find probable cause to believe that the defendants committed the

offense before an indictment could be returned; and (c) by waiving indictment, the

government could, subject to the terms of this Agreement, proceed by criminal information

and the defendants would be prosecuted on that information, rather than on an indictment.

The defendants also acknowledge that (a) they have read and reviewed with their counsel the

charge in the Information; (b) they are satisfied that their counsel has properly explained the

charge and this waiver to them; and (c) no one has made the defendants any promises other

than those expressly set forth in this Agreement or threatened or forced the defendants to

waive indictment.

### Acceptance of Responsibility

3.   The defendants accept and acknowledge that they are responsible for the acts of their current

and former officers, employees and agents that are set forth in the Factual Statement

attached hereto and incorporated by reference herein as Attachment A.  Should the United

States initiate the prosecution deferred by this Agreement, the defendants agree that they will

admit the facts set forth in the Factual Statement and that those facts shall be deemed

admitted by and against the defendants in any such proceeding as an admission of defendants, without objection. Neither this Agreement nor the criminal Information is a final adjudication of the matters addressed in such documents.

### Cooperation

4.  As a result of the investigation by the United States and what is alleged in the Information to be fraudulent conduct, the defendants represent that they have: (a) commenced an internal investigation relating to the subject of the Information, provided the essential findings of that investigation to the United States and made certain employees available to participate in voluntary interviews with the United States regarding the subject of the Information; (b) altered certain of the content of the solicitations described in the Factual Statement and Paragraph 9 of the Information and other similar communications that have been thereafter created and sent by the defendants, so that those solicitations do not contain the representations prohibited by this Agreement; (c) acknowledged responsibility for the conduct described in the Factual Statement and agreed to the payment of a penalty as set forth below; (d) agreed to provide documents to and otherwise further cooperate with the United States regarding its investigation; and (e) agreed to undertake remedial measures as set forth below, to ensure that this conduct does not recur.

5.  The defendants agree to cooperate with the United States, and with any other agency that may be designated by the United States. The defendants agree that their cooperation shall include, but not be limited to, the following:

    (a) Complete and truthful disclosure of all non-privileged information as may be requested by the United States with respect to the activities of the defendants and

3

their subsidiaries and affiliates, and their present and former directors, officers, employees, agents, consultants, contractors and subcontractors, concerning all matters inquired into by the United States;

(b)   On request from the United States, assembling, organizing, and producing (in any method and format requested by the United States), in a timely fashion, all non-privileged documents, records or other tangible evidence in the defendants' possession, custody or control, concerning all matters inquired into by the United States;

(c)   Using the defendants' best efforts to facilitate the availability of its present and former directors, officers, employees, agents, consultants, contractors, subcontractors and attorneys to provide information and/or testimony as requested by the United States, including but not limited to sworn testimony in any proceeding and interviews with law enforcement authorities as requested;

(d)   Providing testimony and other information deemed necessary by the United States or a court to identify or establish the original location, authenticity, or other evidentiary foundation necessary to admit into evidence documents in any proceeding.  Cooperation will include identification of witnesses who, to the defendants' knowledge, may have material information regarding the matters under investigation; and

(e)   With respect to any information, testimony, document, record or other tangible evidence provided to the United States pursuant to this Agreement, the defendants

4

consent to any and all disclosures to other government agencies of such materials

as the United States, in its sole discretion, deems appropriate.

## Compliance Program

6.  In order to maintain an effective compliance program that is reasonably designed,

implemented, and enforced to prevent the occurrence of the conduct described in the Factual

Statement and the Information and the prohibited conduct defined in subparagraph 6(d)

below, and that is otherwise in accord with this Agreement, the defendants have agreed to do

the specific things set forth in this Paragraph 6. The "solicitations" referred to in Paragraph

6 include defendants' communications (i) that are transmitted by United States mail, or e-

mail, subsequent to the effective date of this Agreement; (ii) that are written in the name of

any astrologer, astrological expert, or other named individual, including any such person

who has a contractual relationship with the defendants, with International Rights, Ltd., or

with any other entity that is either owned or controlled by the officers, directors or owners of

the defendants, their successors and assigns, including Cosmic Communications LLC;

Parascience Research Association LLC, American Astrology Research Group, LLC, CCN

Publishing and American Astrology Association; and (iii) that are designed to advertise,

market or promote defendants' astrological products or services. Specifically, defendants

agree to:

(a)  Ensure, and document that they have done so, that the transmitted versions of

solicitations that purport on their face to be written by astrologers, astrological

experts or other named individuals ("named authors") are reviewed and approved

in writing by those named authors before the solicitations are sent to potential customers;

(b) Provide all current employees and contractors who have any role in drafting or editing solicitations (including the astrologers who are the named authors of such solicitations) with the following, and document that they have done so: (i) copies of two Settlement Agreements containing Consent Orders to Cease and Desist ("Consent Orders") that were executed on or about October 2003 and June 2008, respectively, by certain entities and individuals affiliated with the defendants; and (ii) a copy of this Agreement;

(c) Provide all astrologers who currently have contractual relationships with the defendants, with International Rights, Ltd., or with any other corporation affiliated with the defendants (regardless of whether the astrologers had any involvement in the drafting of solicitations) the following, and document that they have done so: (i) the Settlement Agreements and Consent Orders to Cease and Desist described above; and (ii) this Agreement;

(d) During the term of the Agreement, ensure that solicitations do not misrepresent that the recipient of the solicitation has been individually selected to receive the solicitation personally by the astrologer or other named author of the solicitation because the named author of the solicitation has had a vision or dream specifically about the recipient ("prohibited conduct"), and ensure that solicitations are reviewed by outside legal counsel so that they do not contain any such misrepresentations;

6

(e)  With respect to solicitations sent to consumers who are not currently receiving
other products or services ordered from the defendants or who have not ordered a
product or service from the defendants within the preceding ninety (90) days
("potential customers"), a single copy of each such solicitation that was
transmitted by United States mail to potential customers shall also be sent to
United States Postal Inspector Al Herzog, or such other individual as the United
States Postal Inspection Service may designate, at the following address: United
States Postal Inspection Service; 333 E. City Avenue, 2nd Floor; Bala Cynwyd,
PA 19004, or by e-mail (via pdf document) to AHerzog@uspis.gov, within
fourteen (14) days of the first dissemination of the solicitation. During the term of
this Agreement, upon request by the Postal Inspection Service, defendants shall
produce to the locations referenced above a single copy of solicitations, including
all e-mail solicitations, sent to all customers. To ensure that any such requests for
solicitations do not place an unreasonable burden on defendants, the Postal
Inspection Service agrees that it shall limit its request for solicitations that are
being sent to existing customers (i.e., customers who are currently receiving other
products or services from the defendants or who have ordered products or services
from the defendants within the preceding 90 days) to single copies of up to twenty
(20) solicitations during the term of the Agreement. With respect to the
documentation referenced in Paragraph 6(a) above, defendants shall provide that
documentation upon request by the Postal Inspection Service to either of the
locations referenced above within fourteen (14) days of the request;

7

(f)     With respect to the documentation referenced in Paragraphs 6(b) and (c), provide

that documentation to the locations referenced above within the first ninety (90)

days of the Agreement. After this ninety-day period, if the defendants,

International Rights, Ltd., or any other entity affiliated with the defendants

contracts with additional employees, contractors or astrologers who would have

been covered by the terms of Paragraphs 6(b) and (c), provide the relevant

documentation regarding those individuals to the locations referenced above

within fourteen (14) days of the execution of those contracts;

(g)     If during the term of the Agreement, a customer or former customer of the

defendants informs the defendants that they were wrongfully induced, due to the

prohibited conduct, to purchase fulfillment materials, defendants shall log the

details of the customer complaint, including customer identification, nature of

complaint, and refund information in a "customer service log" (which may be

available for inspection by the Postal Inspection Service upon request), refund any

monies paid by such customer within fourteen (14) days of receipt of the

complaint, and provide a copy of the customer service log upon request by the

Postal Inspection Service to either of the locations referenced above within

fourteen (14) days of the request; and

(h)     Appoint one employee of each of the defendants as a person responsible for

monitoring that defendant's compliance with this Agreement.

8

Implementation of these policies and procedures shall not be construed in any future

enforcement proceeding as providing immunity or amnesty for any crimes not protected

from prosecution by Paragraph 12 of this Agreement.

### Payment of Penalty

7.  The defendants agree to pay a penalty in the total amount of $100,000 to the United States

    Postal Inspection Service, to such fund as the Postal Inspection Service may designate, with

    $15,000 payable by the end of the first month after the Agreement is executed and with the

    remainder payable in monthly installments of $5,000 due by the end of each subsequent

    month that the agreement is in effect. For purposes of this provision, if the Agreement is

    executed on June 27, 2011, the first payment would be due on July 27, 2011 and each

    subsequent payment would be due on the 27th day of the following month. The defendants

    also agree that they are jointly and severally liable for the payment of this penalty. All

    payments made pursuant to this Agreement are final and shall not be refunded under any

    circumstance, including if the United States later determines that the defendants have

    breached this Agreement and brings a prosecution against them.

8.  Further, nothing in this Agreement shall be deemed an agreement by the United States that

    this amount is the maximum criminal fine, or the maximum amount of criminal restitution

    or forfeiture, that may be imposed or is owed in such prosecution, and the United States

    shall not be precluded from arguing that the Court should impose a higher fine or amount of

    criminal restitution or forfeiture in the event of a breach. The United States agrees,

    however, to recommend to the Court that the amount paid pursuant to this Agreement

should be offset against whatever fine the Court shall impose as part of its judgment in the event of a subsequent breach and prosecution.

### Deferral of Prosecution

9.  In light of the defendants' willingness to: (a) acknowledge responsibility for the conduct set forth in the Factual Statement; (b) cooperate fully with the Untied States and other investigative and regulatory agencies; (c) implement and maintain the remedial measures discussed in Paragraph 6; and (d) consent to the payment of the penalty discussed in Paragraphs 7-8 above, the United States shall recommend to the Court that prosecution of the defendants on the criminal Information shall be deferred until a period of 18 months has expired from the date this Agreement is executed. For purposes of this provision, the "date this Agreement is executed" is the date of approval by the Court, after all parties have executed the Agreement. In addition, for purposes of this provision, "a period of 18 months has expired from the date this Agreement is executed" at 11:59 p.m. on the day and month occurring 18 calendar months from the date the Agreement is executed (i.e., if the Agreement is executed on June 27, 2011, a period of 18 months will have expired at 11:59 p.m. on December 27, 2012).

10. The United States agrees that, after the expiration of the 18 month period as described above, if the defendants have fully complied with all of their obligations under this Agreement, the United States, within thirty (30) days of the expiration of this Agreement, will seek dismissal with prejudice of the criminal Information filed against the defendants and this Agreement shall expire.

11. The defendants and the United States understand that the Agreement to defer prosecution of the defendants must be approved by the Court, in accordance with Title 18, United States Code, Section 3161(h)(2). Should the Court decline to approve a deferred prosecution for any reason, the United States and the defendants are released from any obligation imposed upon them by this Agreement and this Agreement in its entirety shall be null and void.

12. In return for the full and truthful cooperation of the defendants, the implementation and maintenance of the remedial measures discussed in Paragraph 6, the payment of the penalty discussed in Paragraphs 7-8 and the otherwise successful compliance with the terms and conditions of this Agreement for the full term of the Agreement, the United States agrees not to use any information related to the prohibited conduct described in the Factual Statement or criminal Information in any criminal or civil case against the defendants or Pierre Pasteur except: (a) in a prosecution for perjury or obstruction of justice; or (b) in a prosecution for making a false statement after the date of this Agreement.

13. In addition, the United States agrees, except as otherwise provided herein, that it will not bring any other criminal or civil case against the defendants or Pierre Pasteur related to the prohibited conduct of present and former directors, officers, employees or agents of the defendants described in the Factual Statement and the criminal Information occurring prior to the date on which this Agreement is executed. This paragraph does not provide any protection against prosecution for (a) any action conducted in the future by the defendants, Pierre Pasteur, or the defendants' directors, officers, employees or agents, irrespective of whether disclosed by the defendants or (b) any action conducted in the past by the defendants, Pierre Pasteur, or the defendants' directors, officers, employees or agents that

11

are not described in the Factual Statement or the criminal Information or that were not disclosed to the United States prior to the execution of this Agreement. In addition, this paragraph does not provide any protection against criminal prosecution of any present or former director, officer, employee or agent of the defendants, other than Pierre Pasteur, for any violations committed by them.

14. The defendants agree that, as an alternative to prosecution, in the event that the United States determines that the defendants have knowingly breached the Agreement, an extension or extensions of the term of the Agreement may be imposed by the United States, in its sole discretion, for up to a total additional time period of six months. Any extension of the Agreement extends all terms of the Agreement for an equivalent period. Alternatively, the United States Attorney's Office may, in its sole discretion, and if warranted by the level of cooperation provided by the defendants and their compliance with the terms and conditions of this Agreement, move to lessen the length of the Agreement.

15. Should the United States determine that a defendant has committed any federal crime after the date of this Agreement, that defendant shall, in the sole discretion of the United States, thereafter be subject to prosecution for any federal crimes, including those arising from the conduct underlying this Agreement.

16. Should the United States determine that the defendants have knowingly given false, incomplete, or misleading information pursuant to this Agreement, or have otherwise materially violated any provision of the Agreement, the defendants thereafter shall be subject to prosecution for any Federal criminal violation, including those arising from the conduct underlying the Agreement. Further, should the United States determine that Pierre

12

Pasteur has knowingly given false, incomplete, or misleading information pursuant to this Agreement, then he too may be subject to prosecution arising from the conduct underlying the Agreement. The United States represents that it is not presently aware that defendants or their directors, employees or agents, including Pierre Pasteur, have made any deliberate, false statement to the government in connection with this investigation.

17. The defendants agree that the decision as to whether conduct and/or statements of any individual will be imputed to the defendants for the purpose of determining whether the defendants have materially violated any provision of this Agreement shall be in the sole discretion of the United States.

18. Should the United States determine that the defendants have committed a material breach of any provision of this Agreement, the United States shall provide written notice to the defendants, addressed to defendants' counsel Chad S. Hummel at Manatt, Phelps & Phillips; 11355 West Olympic Boulevard; Los Angeles, CA 90064, or to any successor that the defendants may designate, of the alleged breach and provide the defendants with a fourteen (14) day period from the date of receipt of such notice in which to make a presentation to the United States, or its designee, to demonstrate that no breach has occurred, or to the extent applicable, that the breach was not material, or has been cured. Upon request by the defendants, the United States may agree in writing to extend this fourteen-day period, including providing the defendants with an opportunity to cure any breach of the Agreement. The parties to the Agreement expressly understand and agree that should the defendants fail to make a presentation to the United States, or its designee, within the fourteen-day period (or other period agreed to by the United States), the United States will determine that the

13

defendants are in material breach of this Agreement. The parties further understand and agree that the exercise of discretion by the United States or its designee under this paragraph is not subject to review in any court or tribunal.

19. It is further agreed that in the event that the United States, in its sole discretion, determines that the defendants have materially breached or violated any provision of this Agreement: (a) all statements made by or on behalf of the defendants to the United States, or any testimony given by the defendants before a grand jury or any tribunal, whether prior to or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the United States against the defendants and (b) the defendants shall not assert any claim under the United States Constitution, Rule 11(e)(6) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other Federal rule, that statements made by or on behalf the defendants prior to or subsequent to this Agreement, or any leads therefrom, should be suppressed.

20. The defendants shall consent to a motion, the contents to be agreed upon by the parties, to be filed by the United States with the Court promptly upon execution of this Agreement, pursuant to Title 18, United States Code, Section 3161(h)(2), in which the United States will present this Agreement to the Court and move for a continuance of all further criminal proceedings, including trial, until 18 months have expired from the date of execution of this Agreement, for speedy trial exclusion of all time covered by such a continuance, and for approval by the Court of this deferred prosecution. The defendants and Pierre Pasteur further agree to expressly waive all rights to a speedy trial pursuant to the Sixth Amendment

14

of the United States Constitution, Title 18, United States Code, Section 3161, Federal Rule

of Criminal Procedure 48(b), and any applicable Local Rules of the United States District

Court for the District of Delaware for the period that this Agreement is in effect. The

defendants and Pierre Pasteur further waive any right to contest any prosecution of the

defendants or Mr. Pasteur relating to the prohibited conduct that is the subject of or related

to the criminal Information on the ground that such prosecution is time-barred by the

applicable statute of limitations. The defendants' and Mr. Pasteur's waiver of the statute of

limitations is knowing and voluntary and in express reliance on the advice of counsel. By

signing below in his individual capacity, Mr. Pasteur also agrees to the terms of this

paragraph as it relates to himself individually.

21. The defendants acknowledge that the United States has made no representations, assurances,

or promises concerning what sentence may be imposed by the Court should the defendants

materially breach this Agreement and this matter proceed to further prosecution. The

defendants further acknowledge that any such sentence is solely within the discretion of the

Court and that nothing in this Agreement binds or restricts the Court in the exercise of that

discretion.

### Public Statements

22. The defendants expressly agree that they shall not, through their present or future attorneys,

board of directors, officers, or any other person, make any public statement, in litigation or

otherwise, contradicting the defendants' acceptance of responsibility set forth above or the

factual allegations in the Factual Statement or the criminal Information filed in conjunction

with this Agreement, except as noted below. Any such contradictory statement shall

15

constitute a breach of this Agreement and the defendants thereafter would be subject to prosecution. The decision of whether any public statement by any such person contradicting a fact contained in the Factual Statement or criminal Information or this Agreement will be imputed to the defendants for the purpose of determining whether the defendants have breached this Agreement shall be at the sole discretion of the United States. Should the United States decide that a public statement by any such person contradicts in whole or in part a statement of fact contained in the Factual Statement or the criminal Information, the United States shall notify the defendants. The defendants may avoid a breach of this Agreement by publicly repudiating such statement within forty-eight (48) hours after receipt of such notification.

23. Consistent with the defendants' obligations as set forth above, the defendants shall be permitted to contest liability, raise defenses, or assert affirmative claims in civil proceedings with specific private litigants or classes of litigants relating to the matters set forth in the Factual Statement or the criminal Information, including by disputing that the factual allegations in the Factual Statement or the criminal Information and/or this Agreement apply to a specific litigant or class of litigants. This paragraph is not intended to apply to any statement made by any individual employed by the defendants in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the defendants.

**Limits of This Agreement**

24. This Agreement is binding on the defendants, the following listed entities and any other entities that are either owned or controlled by officers, directors or owners of the defendants,

their successors and assigns: International Rights, Ltd., Cosmic Communications LLC;

Parascience Research Association LLC, American Astrology Research Group, LLC, CCN

Publishing and American Astrology Association.  This Agreement binds the United States

Attorney's Office for the District of Delaware and the United States Postal Inspection

Service, but does not bind any other components of the United States Department of Justice,

any other federal agency or any state or local authorities.  The United States will bring the

cooperation of the defendants and its compliance with its obligations under this Agreement

to the attention of state or local prosecuting offices or agencies, if requested by the

defendants or their attorneys.

25. The defendants agree that in the event of an acquisition, sale or merger involving the

defendant companies bound by this Agreement, or in the event of a change of control, the

defendants shall include in any such contract for acquisition, sale or merger a provision

providing that the obligations described in this Agreement shall bind the survivor entity or

entities.

## **Integration Clause**

26. This Agreement sets forth all of the terms of the Deferred Prosecution Agreement between

the defendants and the United States.  No modifications or additions to this Agreement shall

be valid unless they are in writing and signed by the United States, the defendant's attorneys,

and a duly authorized representative of the defendants.

17

On behalf of Defendant
P.P. List Management, Inc.:

_(signature)_

Pierre Pasteur

Dated:

On behalf of Defendant
Transmonde U.S.A., Inc.

_(signature)_

Pierre Pasteur

Dated:

December 15, 2010

On behalf of the United States Attorney's
Office for the District of Delaware:

DAVID C. WEISS
United States Attorney

_(signature)_

Christopher J. Burke
Assistant United States Attorney

Dated: December 16, 2010

On behalf of the United States Postal
Inspection Service

_(signature)_

R. Emmett Mattes
Deputy Counsel/Assistant Inspector-in-
Charge
United States Postal Inspection Service

Dated: 12 - 16 - 2010

## DIRECTOR'S CERTIFICATE

I have read this Agreement and have carefully reviewed every part of it with counsel for defendant P.P. List Management, Inc. and Transmonde U.S.A., Inc. ("the defendants"). I understand the terms of this Agreement and voluntarily agree, on behalf of the defendants to each of the terms. Before signing this Agreement, I consulted with an attorney for the defendants. The attorney fully advised me of the defendants' rights of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement. No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of the defendants, in any way to enter into this Agreement. I am also satisfied with the attorney's representation in this matter. I certify that I am authorized to enter into this agreement on behalf of these defendants, as I control both entities.

Pierre Pasteur

Dated: Dec 15 2010

300189337.1

19

## CERTIFICATE OF COUNSEL

I am counsel for defendants P.P. List Management, Inc. and Transmonde U.S.A., Inc. ("the defendants"). In connection with such representation, I have examined relevant documents in the defendants' possession and have discussed this Agreement with the authorized representative of the defendants. Based on my review of the foregoing materials and discussions, I am of the opinion that:

1.  Pierre Pasteur is duly authorized to enter into this Agreement on behalf of the defendants.

2.  This Agreement has been duly and validly authorized, executed and delivered on behalf of the defendants, and is a valid and binding obligation of the defendants.

Further, I have carefully reviewed every part of this Agreement with directors of the defendants. I have fully advised these directors of the defendants' rights, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement. To my knowledge, the defendants' decision to enter this Agreement is an informed and voluntary one.

Chad S. Hummel
Attorney for Defendants

Dated:   12/15/10

20